735 P.2d 1170 (1987)
105 N.M. 664
In the Matter of the Termination of Parental Rights with respect to I.N.M. and A.F.E., Children.
STATE of New Mexico, ex rel. DEPARTMENT OF HUMAN SERVICES, Petitioner-Appellee,
v.
TOMMY A.M., Laura M.W., a/k/a Marie M., a/k/a Laura M.M., and David E., Respondents-Appellants.
Nos. 9450, 9508.
Court of Appeals of New Mexico.
March 12, 1987.
*1171 Angela L. Adams, Acting Gen. Counsel, John Petoskey, Asst. Atty. Gen., Human Services Dept., Santa Fe, for petitioner-appellee.
Frederick B. Howden, Grants, Eileen Mallon, Albuquerque, for respondent-appellant Tommy A.M.
R. Max Best, James F. Hart, P.A., Clovis, for respondent-appellant Laura M.W.
S. Frank Stapleton, Portales, for respondent-appellant David E.
Donna U. Quinn, Clovis, Guardian ad Litem.

OPINION
GARCIA, Judge.
These cases involve three appeals from proceedings for termination of parental rights. The cases were consolidated for trial and, on this court's own motion, have been consolidated on appeal.
Two children and three parents are involved in these proceedings. Marie M. (Marie) is the natural mother of I.N.M., and A.F.E. Tommy A.M. (Tommy) is the natural father of I.N.M. and ex-husband of Marie. David E. (David) is the live-in boyfriend of Marie and natural father of A.F.E.
All three parents' rights were terminated by the Curry County District Court on July 17, 1986. We first give a general background and then discuss the rights of each parent separately.

BACKGROUND
I.N.M. was born to Marie and Tommy on September 25, 1979. Marie and Tommy were divorced May 10, 1982, at which time Marie was given custody of I.N.M., subject to reasonable visitation. Tommy was ordered to pay $50 per month child support plus half of the child's medical and dental bills.
Sometime in early 1983, Marie moved from Grants, where she had lived during her marriage, to Texico. Tommy remained in Grants. Marie met David in Texico in *1172 May 1983, and began living with him three or four months later. A.F.E. was born to Marie and David on June 3, 1984.
On August 4, 1984, the Human Services Department (HSD) in Clovis received a report of child abuse. A social worker and deputy sheriff went to the address given, which was David's parents' home. Several family members were present, including David, Marie, I.N.M. and A.F.E. David had been drinking and was in a heated altercation with family members. David's brother had a black eye and I.N.M. had a bump on the back of her head and a bruise on her right thigh. I.N.M. said she did not want to go home. Explanations given by family members led the social worker to believe I.N.M. would be in danger, and she was taken into custody. Physical custody of I.N.M. was returned to Marie on August 15, 1984 and legal custody was retained by HSD.
On October 24, 1984, David's mother reported to HSD that I.N.M. had two black eyes. A social worker and deputy sheriff visited the home. Both of I.N.M.'s eyes were discolored and her jaw seemed to be dislocated. Marie told the social worker I.N.M. had fallen on a coffee table two days earlier. At the social worker's request, Marie took I.N.M. to the emergency room. The emergency room physician referred the case to HSD as a suspected child abuse.
I.N.M. was again taken into custody on October 25, 1984. X-rays were taken that evening, and she was examined the following day by Dr. Martin Goodwin, a diagnostic radiologist. Dr. Goodwin testified that the x-rays disclosed a linear fracture of the skull and fractures of the left first and second ribs. I.N.M. suffered facial paralysis dating from the approximate time of the injury. Surgery was performed in January 1986, at which time it was determined that the condition had been caused by a traumatic injury which could have resulted from any kind of severe blow to the ear. There has been some improvement since the surgery, but I.N.M. is considered a special needs child because of emotional problems from the paralysis.
On October 26, 1984, A.F.E. was also taken into custody because Marie and David were arrested for the abuse of I.N.M.I.N.M. and A.F.E. have been together in foster care since that time. On December 30, 1985, HSD filed petitions for termination of parental rights as follows: the rights of Marie to I.N.M. on grounds of abuse; the rights of Marie and David to A.F.E. on grounds of neglect; and the rights of Tommy to I.N.M. on grounds of abandonment. After trial the district court entered orders terminating the parental rights of all three parents and ordering that the children not be separated.

MARIE'S RIGHTS TO I.N.M.
Marie argues that HSD failed to prove by clear and convincing evidence that she abused and neglected I.N.M., and that HSD failed to take reasonable steps to assist the parents in adjusting the conditions which rendered the parents unable to care for the children. Further, she argues that the cause of I.N.M.'s injuries was not established.

A. Whether the trial court's finding that Marie abused and neglected I.N.M. is supported by sufficient evidence.
The trial court found that: I.N.M. was physically abused by David on numerous occasions; Marie failed to protect I.N.M. from David's abuse; and these abuses placed I.N.M. in situations that were dangerous to her life, health and wellbeing. The court also found that: I.N.M. was abused and neglected by Marie; Marie has never shown remorse or sorrow for what happened to I.N.M.; Marie has not made progress in learning to protect her children; and, Marie continues her relationship with David. The court concluded that HSD proved by clear and convincing evidence that Marie knowingly, intentionally, or negligently placed I.N.M. in a situation that was dangerous to her life or health, and that the termination or her rights to I.N.M. is in I.N.M.'s best interests.
In proceedings seeking the termination of parental rights, the grounds for termination must be proved by clear and convincing evidence. State ex rel. Dep't of *1173 Human Services v. Peterson, 103 N.M. 617, 711 P.2d 894 (Ct.App. 1985). It is for the trial court to determine whether this proof requirement has been met. In re Estate of Fletcher, 94 N.M. 572, 613 P.2d 714 (Ct.App. 1980). The appellate court reviews the evidence in the light most favorable to the prevailing party to determine if it is sufficient to establish, clearly and convincingly, the claim that parental rights should be terminated. See Terrel v. Duke City Lumber Co., 86 N.M. 405, 524 P.2d 1021 (Ct.App. 1974). Here, the evidence is sufficient to support the trial court's findings.
NMSA 1978, Section 32-1-3(M) (Repl. 1986) states in part: "`abused child' means a child: ... (3) whose parent, guardian or custodian has knowingly, intentionally or negligently placed a child in a situation that may endanger his life or health... ." Marie argues that the testimony of the physicians fails to establish the cause of I.N.M.'s injuries. However, there is abundant evidence that David physically abused I.N.M.
The emergency room physician who examined I.N.M. on August 4 and October 24, 1984, testified that the first time he saw I.N.M. she told him that her mother's boyfriend, David, pushed her down and she hit the back of her head on the wall, and that David also struck her with a belt on her right thigh. After seeing I.N.M. on October 24, he was concerned about possible child abuse and referred the case to HSD. The doctor testified that there was suspicious bruising on I.N.M.'s face and the nature of the injury was inconsistent with Marie's statement that the child fell and struck her head on a coffee table, and was more likely the result of the child being struck. The neurosurgeon who performed I.N.M.'s surgery determined that her paralysis was caused by a traumatic injury.
Dr. W.C. Leiding, a clinical child psychologist, testified that I.N.M. told him David hit her with a board, knocking her down, and she hit the coffee table. She also said that David had thrown a plate at her and a plate at Marie because he was mad that Marie was not fixing dinner.
Chet Spear, a deputy sheriff, testified that he interviewed David on October 26, 1984, before David was taken into custody. He testified that David admitted several times that he struck and kicked I.N.M., and that on one occasion he kicked her twice in the ribs and kicked her off the bed. Deputy Spear was also present on October 25 when I.N.M. was taken to the sheriff's office. He testified that her face was bruised and pushed to one side, and when he asked how her face got hurt, I.N.M. said David did it. Fred Hamner, another deputy sheriff, testified that on the day I.N.M. was taken into custody, he remarked about her black eyes and she again said David did it. On October 30 he interviewed I.N.M. and she said "David has a board" and "David threw me down."
Joy Armstrong was the social worker who went to David's parents' home in August 1984, when I.N.M. was injured. She testified that statements were made to her by family members and by I.N.M. that David had caused I.N.M.'s injuries. She also testified that on that occasion Marie told her that David had been drinking heavily and was not responsible for his actions, and that when he hit I.N.M. with a belt she fell off the chair and hit her head. La Von Shelton was an HSD supervisor involved with the case at the time I.N.M. was taken into custody. She testified I.N.M. told her David hit her. Finally, Elizabeth Galvan testified that she visited in David and Marie's home at least once a week and that she had seen David hit I.N.M. "a few times."
The trial court's finding that David abused I.N.M. is supported by ample evidence; similarly, the finding that Marie failed to protect I.N.M. is supported by the same evidence. Elizabeth Galvan testified that she had seen Marie witness abuse by David but do nothing to protect I.N.M. Barbara Martinez, the HSD supervisor in charge of the case when the petitions were filed, testified that Marie will not admit that abuse has occurred. In her opinion, Marie would not protect any child in the future. Dr. Leiding also testified that Marie denies the abuse.
*1174 Dr. William Lowe is a clinical psychologist who tested Marie. In his opinion, Marie would not protect her children and did not exercise proper parental care. Dr. Richard Fink, a clinical psychologist, testified that he does not think Marie could provide a safe atmosphere for her children. Finally, Marie herself testified at the trial that "David hasn't done nothing," and that "he never laid a hand on her [the child]." There is sufficient evidence to support the trial court's finding that Marie denies I.N.M. was ever abused, and that Marie failed to protect I.N.M.

B. Whether HSD has taken reasonable steps to assist David and Marie.
The trial court also found that the conditions and causes of abuse are unlikely to change in the foreseeable future despite reasonable efforts of HSD, and that Marie continues her relationship with David. The HSD plan included visits with A.F.E. by Marie and David, visits with I.N.M. by Marie, Parents Anonymous and, when available, parenting classes for both, AA for David and Al-Anon for Marie, counseling with a psychologist, and weekly visits with a social worker. Barbara Martinez testified that Marie has continued to deny the abuse, and, at different times, has told three different stories about I.N.M.'s injuries. She believes that nothing has changed since HSD has been working with the family because they will not admit there is a problem. She has heard David tell Marie he is in this mess because of her and her daughter, and has heard Marie refer to I.N.M. as a "horrible child." In her opinion, Marie has not protected her children in the past and will not do so in the future.
Dr. Lowe does not see Marie as able to maintain a life on her own, and believes that, given the same circumstances (abuse by David), the same result would occur. He also testified that Marie has never shown remorse or sorrow for what happened to I.N.M.
Marie argues that the situation has changed because David is incarcerated and is no longer in the home. However, there was evidence that the relationship continues and that they will be reunited when David is released. Marie has visited David in prison and left money for him there.
There is sufficient evidence to support the trial court's findings that HSD has made reasonable efforts to assist the family in trying to become capable of caring for I.N.M. and that conditions are unlikely to change.

DAVID AND MARIE'S RIGHTS TO A.F.E.
David and Marie have both appealed the termination of their rights to A.F.E., based on insufficiency of the evidence. Although there is no evidence of physical abuse to A.F.E., two social workers testified that he did not hold his head properly and thought that might indicate some developmental delay. They also testified that the child had a red, swollen penis and diaper rash. There was also testimony that since David has been in prison he has never inquired about A.F.E.'s welfare or requested any visitation with the child. No support payments for A.F.E. have even been made to HSD.
The state's principal argument regarding A.F.E. is that the home situation is dangerous, as evidenced by the serious abuse of I.N.M. The state relies on out-of-state cases for the proposition that parental rights to a child may be terminated because another child in the household was abused. While abuse of a sibling may be insufficient to justify terminating parental rights, it is evidence that should be considered in determining whether a child has been placed in danger.
The Montana Supreme Court noted that "[t]he more enlightened majority rule appears to be that a parent does not have the privilege of inflicting brutal treatment upon each of his children in succession before they may individually obtain the protection of the state." In re T.Y.K., 183 Mont. 91, 93, 598 P.2d 593, 595 (1979). Colorado holds that the trial court can reasonably infer a non-abused child lacked proper parental care from the evidence establishing mistreatment of the other. In re C.R.V.E.L., 38 Colo. App. 252, 557 P.2d 1225 (1976). The South Dakota Supreme *1175 Court holds that, where one child is abused, the trial court has discretion to determine the likelihood of abuse to other children in the family, In re T.L.J., 303 N.W.2d 800 (S.D. 1981), and that it could not allow the health, safety, or life of a young child to be placed back into an environment proved, by abusive treatment of a sibling, to be wholly unfit and improper. In re K.D.E., 87 S.D. 501, 210 N.W.2d 907 (1973).
We agree with the Illinois court that while a court may not speculate as to the future care of a child, the primary consideration is the best interests and welfare of the child and the court should not be forced to refrain from taking action until each child suffers an injury. In re Brooks, 63 Ill. App.3d 328, 20 Ill.Dec. 39, 379 N.E.2d 872 (1978). Under our statutes, it is not necessary to wait until a child has been injured, since knowingly, intentionally, or negligently placing a child in danger constitutes abuse under Section 32-1-3(M)(3), and is a ground for terminating parental rights. NMSA 1978, § 32-1-54(B)(3) (Repl. 1986). The seriousness of I.N.M.'s injuries, combined with testimony about David and Marie, supports the trial court's finding that the parents have placed A.F.E. in situations that could have endangered his life or health, and that the home environment is dangerous to A.F.E. and unlikely to change in the future.
Dr. Leiding testified that, in his opinion, Marie does not have the capability to parent, and that David's anger could be transferred from I.N.M. to A.F.E. Dr. Lowe testified that he believes that if David began abusing A.F.E., Marie would not act to protect him. Dr. Fink testified that if David felt taxed or pushed he might snap or explode in an emotional outburst, and that his outburst might not be directed toward the person that set him off, but rather toward the closest thing at hand. Dr. Lowe believes that if A.F.E. were to misbehave, David's punishment could be excessive and not in keeping with reasonable discipline. He also does not believe Marie could provide a safe atmosphere for the child.
Finally, there was testimony of very strong bonding between I.N.M. and A.F.E. and of a lack of attachment behavior between the parents and children. Since the primary consideration is the welfare and needs of the child, Section 32-1-54(A), we believe that there is evidence to support the finding that it is in A.F.E.'s best interests to have the parental rights terminated and to keep the children together.

TOMMY'S RIGHTS TO I.N.M.
Tommy argues that the evidence against Marie and David was so prejudicial that failure to sever his hearing deprived him of his fundamental right to a fair and impartial trial. While this argument might have merit if the matter had been tried by a jury, this was a bench trial. In a nonjury case, the trial court is presumed to have disregarded incompetent evidence, absent a showing that the court was influenced thereby. Gray v. Grayson, 76 N.M. 255, 414 P.2d 228 (1966). See also In re Adoption of Doe, 89 N.M. 700, 556 P.2d 1176 (Ct.App. 1976) (erroneous admission of evidence is not reversible error in a nonjury proceeding unless it appears that the court must have relied upon such evidence in reaching its decision). Tommy has not established that he was deprived of a fair and impartial trial.
In the absence of fundamental error, the request for a separate trial must have been preserved. NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App.R. 308 (Repl.Pamp. 1983). The record does not reflect that any such request was made. Therefore, the issue may not be raised on appeal. Id.
Tommy also argues that the trial court's finding that he abandoned I.N.M. is not supported by substantial evidence and therefore, the statutory requirements for terminating his parental rights were not met.
"`[A]bandonment consists of conduct on the part of the parent which implies a conscious disregard of the obligations owed by a parent to the child, leading to the destruction of the parent-child relationship.'" In re Adoption of Doe, 100 N.M. 764, 767, 676 P.2d 1329, 1332 (1984) (quoting In re Adoption of Doe, 89 N.M. 606, 618-19, 555 P.2d 906 (Ct.App. 1976)). The requisite disregard may be inferred from *1176 purposeful parental conduct. No specific intent is involved. State ex rel. Dep't of Human Services v. Peterson. Relevant factors in determining whether a parent has abandoned a child include parental neglect, lack of affection shown toward the child, failure to contact the child, failure to support the child if able to do so and disregard for the child's general welfare. Id. Obligations owed by a parent to a child include the obligation to personally care for, support, educate, give moral and spiritual guidance and provide a home and the love and security that a home provides. In re Adoption of Doe, 100 N.M. 764, 676 P.2d 1329.
Abandonment is to be determined objectively, taking into account not only verbal expressions of natural parents, but their conduct as parents as well. In re Adoption of Doe, 89 N.M. 606, 555 P.2d 906. Abandonment focuses on parental conduct and not on the child's welfare. Id.
Tommy suggests a different standard should be used in determining abandonment for a non-custodial, as opposed to a custodial parent. However, whether or not a parent has custody of the child is factored in when determining whether the parent has met his parental obligations. Further, a father may not delegate parental obligations to the mother and be held harmless when she neglects these obligations. State ex rel. Dep't of Human Services v. Peterson.
Marie testified that after she moved to Texico in 1983, I.N.M. received one birthday card from Tommy with five dollars in it, and one package of clothes which she sent back because they were too small. She also testified that Tommy visited I.N.M. once between the time she moved to Texico and October 1984, when I.N.M. was taken into custody.
Barbara Martinez testified that Tommy has visited I.N.M. twice since January 1985, once when he was in town for a Citizens' Review Board hearing and once when he went to Texico for David's criminal hearing. She also testified that he wrote only two or three times after I.N.M. was taken into custody, but has been writing more often since the petition was filed. She also stated that Tommy called her once, after I.N.M.'s surgery, and that he never paid child support to HSD. Tommy admitted that he never paid child support on a regular monthly basis.
While there is evidence sympathetic to Tommy, weighing the evidence and judging the credibility of the witnesses is the province of the trial court. Measured by an objective standard, there is evidence to support the trial court's determination that Tommy abandoned I.N.M. Further, there is evidence from which the trial court could have inferred that most of the contacts attempted by Tommy were instigated by his mother.
The trial court's finding that there is no parent-child relationship between Tommy and I.N.M. is supported by the evidence as a whole; and particularly by the testimony of La Von Shelton that she did not see a relationship between Tommy and I.N.M. when they visited, and that I.N.M.'s attention was directed more toward her grandmother.
Evidence supports the trial court's finding that Tommy abandoned I.N.M.

CONCLUSION
The trial court is affirmed on all issues.
IT IS SO ORDERED.
ALARID and FRUMAN, JJ., concur.