**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-022**

**Filing Date:  January 28, 2011**

**Docket Nos. 30,113 & 30,353**

**STATE OF NEW MEXICO, ex rel.**
**CHILDREN YOUTH AND FAMILIES**
**DEPARTMENT,**

>       **Petitioner-Appellee,**

**v.**

**ARTHUR C.,**

>       **Respondent-Appellant,**

**and**

**ANGEL J.**,

>       **Respondent,**

**and**

**In the Matter of ARTHUR C.,**
**RICARDO O., and ANGELINA C.,**

>       **Children.**

**APPEAL FROM THE DISTRICT COURT OF McKINLEY COUNTY**
**Grant L. Foutz, District Judge**

New Mexico Children, Youth and Families Department
Oneida L'Esperance, Acting Chief Children's Court Attorney
Daniel J. Pearlman, Children's Court Attorney
Santa Fe, NM

for Appellee

Lopez & Sakura, LLP

1

Julie Sakura
Santa Fe, NM

for Appellant

**OPINION**

**KENNEDY, Judge.**

**{1}** In this appeal, Father argues the district court erred: (1) refusing to dismiss the abuse and neglect petition with prejudice; (2) finding sufficient evidence for abuse and neglect of Angelina; and (3) finding sufficient evidence of active efforts by Children, Youth and Families Department (CYFD) to provide remedial services and rehabilitative programs prior to the termination of his parental rights to Arthur and Angelina. We hold that the district court did not err in refusing to dismiss the abuse and neglect petition. Furthermore, we hold that there was sufficient evidence to meet the standard of proof for both a finding of abuse and neglect, and a finding of active efforts by CYFD.

**BACKGROUND**

**{2}** Mother and Father have two children, three-year-old Arthur and two-year-old Angelina and Mother has another son, four-year-old Richard (collectively Children). In November 2007 a domestic violence incident between Mother and Father resulted in a small fracture to Arthur's skull. Soon thereafter, Richard and Arthur were placed into protective custody with CYFD. Angelina was placed into protective custody at birth in November 2008. In June 2008 Mother and Father did not contest abuse and neglect allegations and were adjudicated to have abused and neglected Arthur and Richard.

**{3}** The court-ordered treatment plan provided that both Mother and Father were to have regular supervised visitation with Children, maintain regular contact with a CYFD worker, attend parenting classes, complete domestic violence evaluations and treatment, and receive drug and alcohol assessment, testing, and treatment. Neither Mother nor Father followed their treatment plan, often missing visits with Children and appointments with the prescribed programs. At visitation, Father complained of boredom, treated Richard poorly, and in one instance, angrily cursed at a CYFD worker in front of Children.

**{4}** Mother and Father continued to live together at least up until the termination hearing in October 2009. Three other known domestic violence incidents occurred in May, August, and October 2008, while Mother was pregnant with Angelina. All three incidents resulted in Father's arrest, two of the incidents required Mother's hospitalization, and two involved Father's use of marijuana or alcohol.

**{5}** In November 2008 CYFD filed the abuse and neglect petition against Father and Mother as to Angelina. Thereafter, extensions of time limits for commencing the

adjudicatory hearing for Angelina's abuse and neglect were granted by the district court and the Supreme Court. The final order granted an extension until March 31, 2009, but stated no further extensions would be granted thereafter. On March 10, 2009, CYFD initiated the adjudicatory hearing within this deadline. However, the hearing was recessed after only thirty-seven seconds of testimony, because CYFD had failed to give proper notice of the hearing and make certain required disclosures to Father. The hearing was not reconvened for six more months.

{6}     In August 2009 Father filed a motion to dismiss for failure to hold the adjudicatory hearing for Angelina within the required time lines pursuant to NMSA 1978, § 32A-4-19 (1997) (amended 2009), and newly enacted Rule 10-343 NMRA (2009). The district court allowed for oral argument in September 2009. At oral argument, Father reiterated his Section 32A-4-19 argument. Father also raised the issue of whether to apply Rule 10-320 NMRA (2007) or its recompiled counterpart Rule 10-343 because Rule 10-343 replaced Rule 10-320 after filing but prior to adjudication of this case. Subsequently, the district court denied Father's motion to dismiss.

{7}     The adjudicatory hearing as to Angelina was reconvened on September 10, 2009, and again on October 13, 2009. Concurrently, the district court held termination proceedings as to all Children. CYFD presented evidence in support of both the abuse and neglect determination for Angelina and the petition for termination of parental rights to all Children. On October 13 CYFD, Father, and Mother made closing arguments for the adjudication for the abuse and neglect of Angelina. The district court found that Angelina was abused and neglected beyond a reasonable doubt. The parties then made closing arguments regarding the termination of parental rights to all Children.

{8}     On February 4, 2010, the district court issued its findings of fact and conclusions of law, adopting CYFD's findings of fact. As a matter of law, the court found that there was evidence beyond a reasonable doubt: (1) Father and Mother have neglected Children; (2) the causes of the neglect were unlikely to change despite active efforts by CYFD to assist Father and Mother; (3) active efforts have been made by CYFD to provide remedial services and rehabilitative programs to prevent the breakup of the family, and such efforts have been unsuccessful; (4) continued care of Children by Mother and Father would likely result in serious emotional harm or physical damage to Children; and (5) termination of parental rights is in the best interests of Children. On February 16, 2010, the court issued its judgment terminating the parental rights of Mother and Father to Children. Father now appeals the termination of his parental rights to Arthur and Angelina.

**DISCUSSION**

**A.      Motion to Dismiss**

{9}     Father argues that the adjudication of the abuse and neglect petition did not occur in a timely manner and that the district court improperly denied Father's motion to dismiss based on failure to follow time line requirements. Father contends that an adjudicatory hearing only "nominally commenced" within the time limit of the rule, and then continued

3

for six months, does not meet the requirements of Rule 10-320, Rule 10-343, or Section 32A-4-19 and must be dismissed.

**{10}** In considering the district court's application of the Children's Code and the children's court rules, "we are presented with a pure question of law which we review de novo." *State v. Erickson K.*, 2002-NMCA-058, ¶ 6, 132 N.M. 258, 46 P.3d 1258 (stating that since both parties looked to authority in the Children's Code and the children's court rules, the case presented a question of law to be reviewed de novo). *State ex rel. Children, Youth & Families Dep't v. Paul P., Jr.*, 1999-NMCA-077, ¶ 7, 127 N.M. 492, 983 P.2d 1011 (noting that "[i]ssues of statutory interpretation and application are questions of law that this Court reviews de novo"); *see State v. Adam M.*, 1998-NMCA-014, ¶ 15, 124 N.M. 505, 953 P.2d 40 (concluding that "We review the children's court's interpretation of the Children's Code, a question of law, de novo.").

## 1.     Preservation

**{11}** As a threshold issue, CYFD argues that Father failed to preserve the contention that Rule 10-320 or Section 32A-4-19 apply to this case. We disagree. "To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked." Rule 12-216(A) NMRA. "Preservation turns on whether the district court and opposing party were sufficiently alerted to the question." *Romero v. Bank of the Sw.*, 2003-NMCA-124, ¶ 16, 135 N.M. 1, 83 P.3d 288. Father filed a motion to dismiss for failure to hold the adjudicatory hearing for Angelina within the required time lines pursuant to Rule 10-343 and Section 32A-4-19. Father also raised the issue of both Section 32A-4-19 and Rule 10-320 application to this case at the hearing on his motion to dismiss. It therefore appears that CYFD and the district court were both alerted to Father's arguments. Thus, we hold that Father successfully preserved the issue for appeal.

## 2.     Application of the New and Old Rules

**{12}** Father seeks to apply Rule 10-320 to this case, arguing that the application of Rule 10-343, its amended and recompiled version, would be improper as it was enacted after the case was filed. Prior to the 2009 amendment and recompilation, Rule 10-320 provided that: "If the adjudicatory hearing on any petition is not begun within the time specified in Paragraph A of this rule or within the period of any extension granted as provided by this rule, the petition shall be dismissed with prejudice." This rule was recompiled as Rule 10-343 and amended by Supreme Court order, effective January 15, 2009. The new rule makes dismissal for noncompliance discretionary, stating that the "petition may be dismissed with prejudice or the court may consider other sanctions as appropriate." Rule 10-343. We disagree with Father's argument that since the abuse and neglect petition was filed on November 12, 2008, and Rule 10-343 became effective on January 15, 2009, its application to the March 2009 hearing would be improper.

**{13}** In addition, prior to 2009, new rules could not apply to pending litigation, a notion recognized by *Marquez v. Wylie*, 78 N.M. 544, 545-46, 434 P.2d 69, 70-71 (1967) (holding that court rules would be subject to Article IV, Section 34 of the New Mexico Constitution

4

as if they were legislative enactments with regard to their effect on pending cases, based on the 1942 order from the Supreme Court requiring the rules to be treated as legislative acts), *abrogated by State v. Pieri*, 2009-NMSC-019, ¶¶ 34-35, 146 N.M. 155, 207 P.3d 1132. *Marquez* was abrogated by *Pieri*. 2009-NMSC-019, ¶¶ 19-20 (acknowledging the Court's authority to make new rules applicable to pending cases). In *Pieri*, the Court held that, "The plain language of Section 34 applies to legislative acts only . . . . In the absence of some affirmative act by this Court [giving a rule the force and effect of a legislative act] . . . Section 34 [of the Constitution] does not apply to rules promulgated by this Court." *Id.* ¶¶ 34-35. *Pieri* has been applied expansively. For example, in *State v. Savedra*, the Supreme Court effectively repealed the six-month rule for all district courts from that moment forward, citing *Pieri* as authority. 2010-NMSC-025, ¶ 9, 148 N.M. 301, 236 P.3d 20. Thus, under *Pieri*, new rules are to be applied in all pending cases from the date they become effective. 2009-NMSC-019, ¶¶ 34-35.

**{14}** We conclude that Rule 10-343, rather than its predecessor, was properly applied in this case. Moreover, this Court need not address Father's argument that the "nominally commenced" hearing does not satisfy the rule. As the new rule gives the district court discretion about whether to dismiss for failure to timely commence the hearing, we need only evaluate the court's use of that discretion in not dismissing the case. Before we evaluate for abuse of discretion, we turn to Father's alternative argument about applying the statute over the amended rule.

### 3.   Application of the Amended Rule Over the Statute

**{15}** In the alternative, Father contends that if Rule 10-343 is applied by this Court, Section 32A-4-19 enacted by the Legislature, trumps the amended provision of Rule 10-343 that allows for the district court's discretion. Section 32A-4-19(D) states, "When the adjudicatory hearing on any petition is not commenced within the time period specified in Subsection A of this section or within the period of any extension granted, the petition shall be dismissed with prejudice."

**{16}** Father concedes that statutes do not trump procedural rules enacted by the Supreme Court. Yet, Father argues that Section 32A-4-19 constitutes a legislative declaration of substantive law, and as such, would prevail over a court rule. Father bases his argument on the holding that parents have a fundamental liberty interest in caring for and having custody and control over their children. *E.g.*, *In re Pamela A.G.*, 2006-NMSC-019, ¶ 11, 139 N.M. 459, 134 P.3d 746.

**{17}** This Court has determined that "substantive law creates, defines, or regulates rights while procedural law outlines the means for enforcing those rights." *State v. Valles*, 2004-NMCA-118, ¶ 14, 140 N.M. 458, 143 P.3d 496. "Pleading, pre-trial, all rules of evidence . . . and other trial and post-trial mechanisms, designed to accomplish a just determination of rights and duties granted and imposed by the substantive law, are traditionally considered to be . . . procedural law." *State ex rel. Gesswein v. Galvan*, 100 N.M. 769, 772, 676 P.2d 1334, 1337 (1984) (internal quotation marks and citation omitted).

5

**{18}** In *Southwest Underwriters v. Montoya*, our Supreme Court held that a statute providing for dismissal of an action not brought to conclusion within three years was a procedural statute. 80 N.M. 107, 109-10, 452 P.2d 176, 178-79 (1969). There, the Court stated that the New Mexico Constitution forbid the legislative, judicial, and executive branches of "government from exercising . . . :  any powers properly belonging to either of the others, except as . . . expressly directed" by the Constitution. *Id.* at 109, 452 P.2d at 178 (emphasis, internal quotation marks and citation omitted). The Court then stated that the statute at issue, which required dismissal with prejudice for failure to bring a civil case to its final determination within two years, "purport[ed] to direct a change of procedure which infringe[d] on the court's exercise of its constitutional duties." *Id.* at 110, 452 P.2d 179. Thus, the rule of court prevailed over the statute in *Montoya*. *Id*. In addition, we have held that, "it is an inherent right of the courts and therefore one existing independently of any statute to dismiss a suit for failure to prosecute it with diligence." *City of Roswell v. Holmes*, 44 N.M. 1, 2-3, 96 P.2d 701, 701 (1939).

**{19}** Moreover, our reading Section 32A-4-19, originally enacted by Laws 1993, suggests the statute to be a mere restatement of preexisting Rule 10-320, formerly called Rule 10-308 NMRA (1986). Based upon the existing distinctions between substantive and procedural law, we hold that Section 32A-4-19 is procedural.

**{20}** In addition, our Supreme Court  has held "[i]t is fundamental that the *procedure* to enforce or secure rights or liabilities may be changed. In other words, no person has a vested right in procedural law. This statement is subject to the qualification embodied in [S]ection 34 of [A]rticle 4 of our Constitution," regarding legislative acts. *Kreigh v. State Bank of Alamogordo*, 37 N.M. 360, 364, 23 P.2d 1085, 1087 (1933). Thus, Father has no vested right in the dismissal with prejudice required under Section 32A-4-19 because it is a procedural statute.

**{21}** As Father concedes, procedural rules promulgated by the Supreme Court prevail over conflicting statutes enacted by the Legislature. "[T]he power to provide rules of pleading, practice, and procedure for the conduct of litigation in the district courts, as well as rules of appellate procedure, is lodged in [the Supreme Court] by the Constitution of New Mexico." *Ammerman v. Hubbard Broadcasting, Inc*., 89 N.M. 307, 310-11, 551 P.2d 1354, 1357-58 (1976) (internal quotation marks and citation omitted). In *Albuquerque Rape Crisis Center v. Blackmer*, our Supreme Court held that although it has the ultimate rule-making authority, it is not absolute and the Legislature may also enact procedural statutes. 2005-NMSC-032, ¶ 5, 138 N.M. 398, 120 P.3d 820. There, our Supreme Court explained that it may "exercise [its] superintending control under Article VI, Section 3, to revoke or amend a statutory provision when the statutory provision conflicts with an existing court rule." *Id*.

**{22}** Thus, "the Legislature . . . is only precluded from promulgating statutes that conflict with a procedural rule of the Supreme Court." *Grassie v. Roswell Hosp. Corp.*, 2008-NMCA-076, ¶ 10, 144 N.M. 241, 185 P.3d 109. We held in *Grassie*, that as long as there is no "fatal conflict," both the statute and court rule may be given effect. *Id.* Thus, we will read the statute and rule together, unless they are irreconcilable. Here, Section 32A-4-19 requires dismissal with prejudice for failure to meet time line requirements, and Rule 10-

6

343 allows the court discretion to dismiss or issue other sanctions.  There appears to be a fatal conflict between the statute and the rule, as the remedy the rule provides is contrary to the statute's remedy. *Compare Grassie*, 2008-NMCA-076, ¶ 11 (holding that the statute and a rule could be read together when the statute "simply expands upon the purpose of [the rule]"); *with Jones v. Harris News, Inc.*, 2010-NMCA-088, ¶ 13, 148 N.M. 612, 241 P.3d 613 (holding that when the rule was permissive on filing a bond, and the statute restricted its filing, the rule controlled).  We resolve this conflict in favor of applying the rule.

## 4.      Application of the Amended Rule

**{23}**    Since prior to the adjudicatory hearing, Rule 10-343 replaced Rule 10-320's mandatory dismissal requirement with discretionary dismissal, Father's issue is whether there was an abuse of discretion in denying his motion to dismiss the petition.  "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153.  "When there exist reasons both supporting and detracting from a [district] court decision, there is no abuse of discretion." *Talley v. Talley*, 115 N.M. 89, 92, 847 P.2d 323, 326 (Ct. App. 1993).  Because of CYFD's disregard for the rules in this case, the district court had the difficult decision of whether to dismiss the abuse and neglect petition, prolonging the uncertainty of Angelina's adoption or foster-care status.  After considering both Father's and CYFD's arguments, and the interests of Child involved, the district court chose not to dismiss the case.  Although the district court did not articulate the reasons for its decision, we draw from the record that the court decided to proceed with the case in the interest of Angelina's safety and well being and to more quickly determine her custody status.  As there are reasons both supporting and detracting from this decision, we hold the district court has not abused its discretion in this matter.

## B.      Sufficiency of Evidence to Support Termination of Parental Rights as to Both Arthur and Angelina

**{24}**    Father argues that there was insufficient evidence to support the district court's determination that Father abused or neglected Angelina, or that CYFD made active efforts to provide remedial services and rehabilitative programs as required by Indian Child Welfare Act (ICWA) with regard to the termination of parental rights to both Arthur and Angelina.

**{25}**    To terminate a parent's rights to an Indian child, the district court must apply a higher standard of proof than the clear and convincing evidence standard traditionally applied in termination proceedings. Section 32A-4-29(I).  The ICWA requires that, prior to termination of parental rights, there must be "a determination, supported by evidence beyond a reasonable doubt . . . that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 U.S.C.A. § 1912(f) (1978).  Moreover, state law reiterates that "In any proceeding involving a child subject to the federal [ICWA] of 1978, the grounds for any attempted termination shall be proved beyond a reasonable doubt."  Section 32A-4-29(I).

**{26}**    The district court applied this standard to the grounds for termination due to abuse

7

and neglect, as provided by NMSA 1978, Section 32A-4-28 (2005).  The court found, in accordance with Section 32A-4-28(B)(2), that (1) Arthur and Angelina were neglected or abused as defined in the Abuse and Neglect Act; (2) the conditions and causes of the neglect and abuse were unlikely to change in the foreseeable future, despite reasonable efforts by CYFD to assist Mother and Father; and (3) CYFD made reasonable efforts to assist Father and Mother in adjusting to the conditions that have rendered them unable to properly care for Children.  In compliance with ICWA's requirements under 25 U.S.C.A. Section 1912(d), the district court also found beyond a reasonable doubt that CYFD made *active* efforts to provide remedial services and rehabilitative programs designed to prevent the breakup of the family and that these efforts had been proven unsuccessful.

**{27}**    In addressing Father's contentions, we review for sufficient evidence of abuse and neglect, and for sufficient evidence of active efforts to satisfy the beyond a reasonable doubt standard.  To meet the beyond a reasonable doubt standard, "the evidence and inferences drawn from that evidence must be sufficiently compelling so that a hypothetical reasonable factfinder could have reached a subjective state of near certitude" about its conclusion.  *State v. Maes*, 2007-NMCA-089, ¶ 12, 142 N.M. 276, 164 P.3d 975 (internal quotation marks and citation omitted).  "In accordance with the standard of review, when considering a claim of insufficiency of the evidence, the appellate court resolves all disputes of facts in favor of the successful party and indulges all reasonable inferences in support of the prevailing party." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177; *see State v. Riley*, 2010-NMSC-005, ¶ 12, 147 N.M. 557, 226 P.3d 656 (noting that in criminal cases where the standard is beyond a reasonable doubt, an appellate court also reviews the evidence in the light most favorable to the verdict reached by the lower court).

## 1.    Abuse and Neglect

**{28}**    Father contends there was insufficient evidence to support the district court's determination that Father abused and neglected Angelina.  Father argues that testimony regarding three domestic violence incidents and Father's failure to comply with the court-ordered treatment plan were the only evidence offered against him and were insufficient to prove abuse and neglect.  NMSA 1978, Section 32A-4-2(B)(1) (1999) (amended 2009) of the Abuse and Neglect Act (the Act) defines "abused child" to include a child "who has suffered or who is at risk of suffering serious harm because of the action or inaction of the child's parent, guardian[,] or custodian."  The Act also considers abuse to happen when a "parent, guardian[,] or custodian has knowingly, intentionally[,] or negligently placed the child in a situation that may endanger the child's life or health."  Section 32A-4-2(B)(4). The Act defines "neglected" to include a child lacking "proper parental care and control or subsistence, education, medical[,] or other care or control necessary for the child's well-being because of the faults or habits of the child's parent . . . or the failure or refusal of the parent."  Section 32A-4-2(E)(2).

**{29}**    Arthur's abuse and neglect is not at issue in this appeal, but it is of relevance to the adjudication of Angelina's abuse and neglect, which we are evaluating.  As a preliminary matter, we hold that Father's abuse and neglect of Arthur was proved beyond a reasonable

8

doubt. The history of violence is persuasive, and Father pled no contest to the abuse and neglect of Arthur. We conclude that the evidence presented and the court's reliance on the no contest plea was sufficient to establish that Arthur was abused and neglected beyond a reasonable doubt.

**{30}** Therefore, we now turn to the evidence presented to prove Angelina's abuse and neglect by Father. The evidence the district court relied on in making its determination was largely the past abuse of Arthur and the reoccurring domestic violence that often involved drug use by Father and that happened while Angelina was in utero.

**{31}** We first address the issue of the district court relying on Arthur's abuse and neglect to find abuse and neglect of Angelina. This Court has held that, "While abuse of a sibling may be insufficient to justify terminating parental rights, it is evidence that should be considered in determining whether a child has been placed in danger." *In re I.N.M.*, 105 N.M. 664, 668, 735 P.2d 1170, 1174 (Ct. App. 1987); *see State ex rel. Children, Youth & Families Dep't v. Shawna C.*, 2005-NMCA-066, ¶ 26, 137 N.M. 687, 114 P.3d 367 (noting that past harm to other children is relevant to determining the abuse and neglect of a different child). In *In re I.N.M.*, this Court found that a sibling's serious injuries combined with testimony about the parents physical abuse of a sibling "support[ed] the [district] court's finding that the parents have placed [the child] in situations that could have endangered his [or her] life or health." 105 N.M. at 669, 735 P.2d at 1175. As we explained, "Under our statutes, it is not necessary to wait until a child has been injured, since knowingly, intentionally, or negligently placing a child in danger constitutes abuse . . . and is a ground for terminating parental rights." *Id.* Combined with the testimony regarding parental abuse and neglect of the sibling, there was sufficient evidence of the child's abuse based upon the abuse of the sibling. *Id.*

**{32}** Similarly, in *State ex rel. Children, Youth and Families Department v. David F., Sr.*, we found that even though the child was "taken into CYFD custody at the time of birth, and was therefore never in [the p]arents' care, the court could rely on evidence of neglect or abuse to the other children as a factor in determining whether parental rights to [the child] should be terminated." 1996-NMCA-018, ¶ 36, 121 N.M. 341, 911 P.2d 235.

**{33}** In this case, the evidence showed that during a domestic violence incident between Mother and Father, Arthur received a skull fracture. Subsequently, Father pled no contest to the abuse and neglect of Arthur and Richard. Additionally, the district court found that "The conditions and causes of [Arthur and Angelina] coming into the custody of [CYFD] were a history of domestic violence and alcohol abuse by Mother and Father and physical abuse of . . . Richard . . . and Arthur . . . by Father." Furthermore, Father complained visitation was boring, and Father was controlling, bossy, and condescending to Richard during visitation. When his anger flared, Father cursed at a CYFD worker in front of Children. The district court also found that Father was not capable of caring for Children in a stable and safe environment. Taken together, this evidence supports a finding that Father endangered Angelina, placing her at risk of suffering serious harm, like the injury suffered by her brother. Thus, we hold that the court validly relied on the past physical abuse of Angelina's sibling, at least in part, to find sufficient evidence of abuse and neglect

of Angelina.

{34}    Second, we examine the district court's reliance on the domestic violence as grounds for termination.  We have found that "Evidence of past domestic violence can be relevant in an action for neglect when the abused parent fails to recognize the harm the violence causes the children or refuses to get help in ending the situation." *In re Guardianship of Ashleigh R.*, 2002-NMCA-103, ¶ 21, 132 N.M. 772, 55 P.3d 984.  Moreover, failure to avoid domestic violence, when it is an essential part of the parent's treatment plan, contributes to a finding of neglect.  Even non-abuser parents, who are the victims of domestic violence, can be obligated by the court to avoid domestic violence.  In *State ex rel. Children, Youth and Families Department v. Vanessa C.*, we upheld a finding of abuse and neglect when the district court "found that [the m]other had failed to comply with several key elements of her treatment plan, including her need to avoid drugs, domestic violence, and other criminal involvement[, and] determined that [the m]other's failure to comply with the treatment plan caused her to neglect [her children]." 2000-NMCA-025, ¶ 26, 128 N.M. 701, 997 P.2d 833.

{35}    In this case, Father is the abuser and repeatedly committed domestic violence after the district court imposed a treatment plan that included programs and counseling to prevent domestic violence.  His treatment plan included substance abuse treatment, drug testing, a program for parenting skills, and mental health and family relations assessment and counseling.  Despite the removal of Children after the November 2007 incident, Father continued to engage in domestic violence while Mother was pregnant with Angelina.  These incidents were often accompanied by Father's use of alcohol or drugs.  CYFD introduced evidence of three other domestic violence incidents that occurred in 2008.

{36}    "Gallup Police Officer Cindy Romancito testified that on May 15, 2008, she was dispatched to Mother's and Father's residence as a result of a domestic violence incident between them."  At the time, Mother was four months pregnant with Angelina, and Mother said that Father had kicked her in the stomach and slapped her face.  Mother was hospitalized for observation after complaining of stomach pains, and Father was arrested for battery on a household member.  Additionally, the officer said that Father smelled of marijuana.

{37}    Another domestic violence incident occurred on August 1, 2008, testified to by Deputy Sheriff Monte Yazzie.  The deputy sheriff was dispatched to Mother and Father's residence regarding a 911 call hang-up.  Mother told the deputy sheriff that Father had been drinking and pushed Mother several times.  The deputy sheriff testified that Father smelled of alcohol.  Again, Father was arrested for battery upon a household member.

{38}    Lastly, Gallup Police Officer Ronald Howard testified that he was dispatched to Mother and Father's residence on October 2, 2008, in response to a report of domestic violence.  Upon arriving at the residence, he heard a female inside crying and saying, "Please stop, don't hurt me."  The officer attempted to enter and Father fled the residence.  Mother told the officer that she was thirty-seven weeks pregnant and that Father was angry with Mother because he thought she was cheating on him.  When Mother attempted to leave the residence, Father pulled her hair, hitting her head into the floor and the wall, and punched

10

her body and stomach area. Additionally, Father prevented Mother from calling the police. Mother was taken to the hospital for observation because she could not feel her fetus anymore. Father was arrested for battery against a household member, false imprisonment, assault against a household member, interference with communications, and resisting, evading, and obstructing a police officer.

{39}   Father repeatedly and knowingly placed Mother and his unborn child in serious danger by engaging in domestic violence and battering Mother. Father's actions demonstrate that he fails to recognize the harm the violence causes Children. We hold that this evidence was compelling enough for the district court to find that Father's abuse of Mother rendered him incapable of providing proper parental care and control for Angelina. We conclude that Father's failure to follow his treatment plan, that included drug testing, drug counseling, and counseling to improve his family relations and parenting skills, also contributed to his neglect of Angelina, similar to our holding in *Vanessa C.*, 2000-NMCA-025, ¶ 26.

{40}   In conclusion, we hold that evidence of Father's physical abuse of Arthur that resulted in a skull fracture and Father's no contest plea to abuse and neglect; Father's violent behavior toward Mother while she was pregnant with Angelina; Father's several arrests for domestic violence; and Father's failure to comply with the treatment plan that addressed his substance abuse and domestic violence, were sufficient to establish Angelina was abused and neglected by Father.

## 2.   Active Efforts

{41}   Father argues that CYFD did not engage in active efforts to provide remedial services and rehabilitative programs to prevent the family's break up, as required by ICWA, 25 U.S.C. Section 1912(d). We note that Father has failed to preserve this issue for appeal. Although Mother contended that CYFD failed to make active efforts at the termination of parental rights (TPR) proceeding, Father only argued generally that the State did not meet its burden of beyond a reasonable doubt. Additionally, Father's findings of fact do not state that CYFD had failed to make active efforts and Father failed to object to the district court's finding of fact that CYFD had made "reasonable and active efforts to assist Mother and Father."

{42}   Nonetheless, we address this issue because we have concluded in the past that "[a parent's] failure to expressly raise violations of ICWA at the adjudicatory hearing does not prevent us from reviewing the record to determine if the district court fulfilled its obligation to abide by the requirements of ICWA." *State ex rel. Children, Youth & Families Dep't v. Marlene C.*, 2009-NMCA-058, ¶ 9, 146 N.M. 588, 212 P.3d 1142, *cert. granted*, 2009-NMCERT-006, 146 N.M. 734, 215 P.3d 43. Under 25 U.S.C. § 1914 (1978), a parent can challenge in any court of competent jurisdiction for violations of "Section 1912, which concerns the proof required to substantiate a termination of parental rights or a foster care placement." *Marlene C.*, 2009-NMCA-058, ¶ 9.

{43}   We hold there was sufficient evidence for the district court to find beyond a reasonable doubt that CYFD engaged in active efforts to provide remedial services and

11

rehabilitative programs.

**{44}** The district court made adequate findings, in its adopted findings of fact, that CYFD engaged in active efforts to provide remedial services and rehabilitative programs to Father. The court found that the Permanency Planning Worker (Worker) referred "Father to [the] Early Learning for Success (ELFS) Program for parenting skills and information." The ELFS provider went to Father's home and other agreed upon places to provide his services but Father failed to show up for more than half of the scheduled appointments. Worker similarly "arranged supervised visitation for Father twice a week for two hours a session, [but] Father was a no show/no call for more than half of the visits." The district court also found that "Worker would make efforts to contact Father by phone, by message phone, and by coming to his residence," but Worker was unsuccessful because Father failed to keep Worker informed of his whereabouts. In addition, Worker referred Father to a drug and alcohol assessment program but Father never attended outpatient substance abuse treatment. Worker referred Father for a mental health and family relations assessment by Connections, a counseling and treatment facility, but Father never submitted to the assessment. Although Father attended two counseling sessions through Connections, he was discharged for lack of participation after missing two sessions. CYFD also provided Father with bus transportation for his appointments and offered to pick Father up at his residence if a CYFD employee was available to drive him to his appointments. Lastly, Father did not appear at the TPR hearing on October 13, 2009, and thus he did not offer testimony about any services he did not receive from or that were not pursued or monitored by CYFD in its efforts to assist him.

**{45}** The record indicates that CYFD repeatedly and persistently made active efforts to provide the services and rehabilitative programs to prevent the family's break up. Father sporadically engaged in the provided services and programs, demonstrating his capability but unwillingness to participate in the remedial and rehabilitative programs and services provided by CYFD. Based on these findings of fact and evidence presented at trial, we hold that the district court had sufficient evidence to find beyond a reasonable doubt that CYFD made active efforts.

**C.** **Termination Hearing Time Line and Placement With Extended Family Members**

**{46}** Father also argues that the termination hearing was not held within the required time line, and that the district court erred in not addressing whether CYFD had an obligation to suspend the TPR proceedings and consider placement of Children with extended family members. However, Father has not briefed these issues. "We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority. We therefore will not do this research for counsel." *In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). Furthermore, an appellate court should not reach issues that the parties have failed to raise in their briefs. *See In re Doe*, 98 N.M. 540, 541, 650 P.2d 824, 825 (1982). Thus, we do not consider these issues.

**CONCLUSION**

**{47}** We conclude that the district court properly denied Father's motion to dismiss based on its application of Rule 10-343. Additionally, we find there was sufficient evidence to determine that Angelina was abused and neglected, and that CYFD made active efforts to provide remedial services and rehabilitative programs to prevent the family's break up. Therefore, we affirm the termination of Father's parental rights to Angelina and Arthur.

**{48}** **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR**:

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**MICHAEL E. VIGIL, Judge**

**Topic Index for** _State ex rel. Children, Youth & Families Dep't v. Arthur C._**, Docket Nos. 30,113 and 30,353**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-PA | Preservation of Issues for Appeal |
| AE-SB | Substantial or Sufficient Evidence |
| | |
| **CD** | **CHILDREN** |
| CD-CT | Children's Court Rules |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP- SF | Standard of Proof |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-FI | Fundamental Liberty Interest of Parents |
| | |
| **DR** | **DOMESTIC RELATIONS** |
| DR-DV | Domestic Violence |
| DR-NA | Neglect and Abuse |
| DR-TR | Termination of Parental Rights |
| | |
| **IL** | **INDIAN LAW** |
| IL-IW | Indian Child Welfare Act |