**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2012-NMCA-065

Filing Date: May 18, 2012

Docket No. 30,951

STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH AND FAMILIES
DEPARTMENT,

 Petitioner-Appellee,

v.

CARL C.,

 Respondent-Appellant,

and

DANA H.,

 Respondent,

and

IN THE MATTER OF CHEYENNE C. and
CAYLIE C.,

 Children.

and

Docket No. 31,305

STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH AND FAMILIES
DEPARTMENT,

 Petitioner-Appellee,

v.

**DANA H.,**

  **Respondent-Appellant,**

**and**

**CARL C.,**

  **Respondent,**

**and**

**IN THE MATTER OF CHEYENNE C. and CAYLIE C.,**

  **Children.**

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**Grant L. Foutz, District Judge**

New Mexico Children, Youth and Families Department
Oneida L'Esperance, Chief Children's Court Attorney
Daniel J. Pearlman, Children's Court Attorney
Santa Fe, NM

for Appellee in Carl C.

New Mexico Children, Youth and Families Department
Oneida L'Esperance, Chief Children's Court Attorney
Rebecca J. Liggett, Children's Court Attorney
Santa Fe, NM

for Appellee in Dana H.

Lopez & Sakura, LLP
Julie Sakura
Santa Fe, NM

for Appellant Carl C.

Alex Chisholm
Albuquerque, NM

for Appellant Dana H.

Robert Ionta
Gallup, NM

Guardian Ad Litem

## OPINION

**VANZI, Judge.**

**{1}** Both Dana H. (Mother) and Carl C. (Father) appeal the district court's adjudication that Cheyenne C. (Infant Child) and Caylie C. (Older Child) (collectively, Children) were abused pursuant to NMSA 1978, Section 32A-4-2(B)(1) (2009), finding alternatively that Mother and Father each either physically abused Infant Child or that they did not recognize or acknowledge that the other parent had perpetrated the abuse. We combined the appeals due to the shared record and to address in one opinion Mother's and Father's identical argument that the district court erred in finding that Children were abused without making a finding assigning the abuse to a specific parent. Father further argues that Section 32A-4-2(B), as applied to him, is unconstitutionally vague. For the reasons that follow, we affirm.

## BACKGROUND

**{2}** The following facts were established at the adjudicatory hearing on July 27 and 28, 2010. On February 11, 2010, Infant Child was hospitalized for a respiratory issue. Upon admission, an x-ray and full skeletal survey were performed, which revealed a fracture in Infant Child's left clavicle. The fracture appeared to be healing, and no other fractures were found. Infant Child was discharged to Mother and Father on February 18, 2010.

**{3}** On February 25, 2010, Mother brought Infant Child back to the hospital, reporting that Infant Child had been ill the previous night. During Infant Child's hospital stay, the hospital staff determined that Infant Child had suffered three seizures, and Infant Child was transferred to a different hospital. On March 3, 2010, the hospital performed an MRI and skeletal survey that revealed that Infant Child had two subdural hematomas, a right skull fracture, a fracture in one of the bones of the right forearm, and an injury to the right clavicle. Of the subdural hematomas, one appeared to be approximately two weeks old, and the other appeared to be less than one week old. Further examination revealed a right femur fracture, a right parietal skull fracture, and ischemic brain tissue damage. Based on Infant Child's extensive injuries, the Children, Youth and Families Department (CYFD) filed an abuse/neglect petition pursuant to Section 32A-4-2, alleging that Mother and Father had abused and neglected Children.

**{4}** When speaking to CYFD, both Mother and Father denied having knowledge of what caused Infant Child's injuries. On various occasions, they blamed the injuries on Older

Child (who was less than two years old at the time), on the hospital staff, and on an evil spirit residing in their household. At the hearing, both Mother and Father refused to testify on Fifth Amendment grounds.

{5}    Dr. Gwen Lattimore testified as an expert in the evaluation, diagnosis, and treatment of children suspected of having been abused and/or neglected. She testified to Infant Child's various injuries and ultimately concluded that Infant Child was injured through non-accidental or abuse trauma occurring on at least two separate occasions and that the head trauma was the cause of Infant Child's seizures. Dr. Lattimore testified that the kinds of injuries observed on Infant Child were caused by adults and not by short falls or small children. She further testified that, while Infant Child's fractures were not readily apparent to the naked eye, injuries like those Infant Child received would have produced behaviors or reactions from Infant Child that her caretakers would have noticed, even if they could not tell specifically what the injuries were.

{6}    CYFD called two other witnesses, Officer Jimmy Ramos of the New Mexico State Police Department, and Lynette Mose, a social worker assigned to the case. Officer Ramos testified that Mother had told him that she and Father were the primary caretakers for Children and that her mother, Children's grandmother, watched them on Wednesday evenings for a couple of hours while Mother and Father attended a college class. Officer Ramos further testified that Mother had said that Children's grandmother was the only person who was with Children when Mother and Father were not around. Ms. Mose testified that, in her investigation, she had interviewed Mother and Father, the grandmother, and a CYFD employee. She also reviewed various documents, including Dr. Lattimore's consultation report, the abuse and neglect petition, and an affidavit. Based on her investigation and her observations of the previous testimony, she believed that the continued care of Children by Father and Mother would likely result in serious emotional or physical damage to Children.

{7}    Before entering its findings, the district court noted that it had "no problem" finding by clear and convincing evidence that Mother or Father caused the injuries, but it could not determine which parent specifically was the perpetrator. Later, in the district court's findings of fact and conclusions of law, the district court found that Mother and Father were the "primary caretakers [for Children] between February 12, 2010[,] and March 2, 2010[,]" and that Infant Child "suffered non-accidental trauma (physical abuse) by . . . [Mother] and/or [Father]." The district court further found that Mother and Father "either physically abused [Infant Child], or the physical abuse of [Infant Child] was perpetrated by [one parent] and [the other] did not recognize and/or acknowledge . . . the abuse and [therefore] is a threat to the safety of [Children]." Regarding Older Child, the court stated, "[t]he non-accidental trauma (physical abuse) of [Infant Child] by [Mother and/or Father] places [Older Child] at risk of suffering serious physical and emotional harm if placed back in the care of [Mother and/or Father]." The court further clarified that "if there is a non-abusing parent, [the non-abusing parent's] inaction resulted in an 'abused child' as defined in [Section] 32A-4-2(B)." The court adjudicated Children as abused, and these appeals followed.

4

**DISCUSSION**

**The Adjudication of Children as Abused**

**{8}** Mother and Father ask us to interpret Section 32A-4-2(B)(1) and find that the statute requires a specific determination of which parent's actions or inactions caused Children to be put at risk. Interpretation of a statute is a question of law that an appellate court reviews de novo. *Morgan Keegan Mortg. Co. v. Candelaria*, 1998-NMCA-008, ¶ 5, 124 N.M. 405, 951 P.2d 1066. "In interpreting statutes, we seek to give effect to the Legislature's intent, and in determining intent we look to the language used and consider the statute's history and background." *Key v. Chrysler Motors Corp.*, 121 N.M. 764, 768-69, 918 P.2d 350, 354-55 (1996).

**{9}** Mother and Father argue that the district court erred in adjudicating Children as abused without determining which parent actually caused the injuries suffered by Infant Child. To support their argument, Mother and Father each rely on this Court's interpretation of a previous version of the child abuse statute, Section 32A-4-2 (1993), as analyzed in *State ex rel. Children, Youth & Families Department v. Vincent L.*, 1998-NMCA-089, ¶¶ 8-12, 125 N.M. 452, 963 P.2d 529. In analyzing Mother's and Father's argument, we find it helpful to examine the historical background and amendments to the relevant portions of the child abuse statute.

**{10}** Prior to 1997, the child abuse statute provided the following definition for "abused child."

> "Abused child" means a child:
>
> > (1) who has suffered physical abuse, emotional abuse or psychological abuse inflicted by the child's parent, guardian or custodian;
> >
> > (2) who has suffered sexual abuse or sexual exploitation inflicted by the child's parent, guardian or custodian;
> >
> > (3) whose parent, guardian or custodian has knowingly, intentionally or negligently placed the child in a situation that may endanger the child's life or health; or
> >
> > (4) whose parent, guardian or custodian has knowingly or intentionally tortured, cruelly confined or cruelly punished the child[.]

Section 32A-4-2(B) (1993).

**{11}** In our analysis of this version of the child abuse statute, we found that, prior to its amendment in 1997, the definition of "abused child" did not permit the children's court to

5

adjudicate a child abused or neglected without assigning responsibility for the abuse or neglect to a parent, guardian, or custodian. *Vincent L.*, 1998-NMCA-089, ¶ 1. The 1997 amendment added an additional paragraph, Section 32A-4-2(B)(1), to the definition that stated that an "abused child" is a child "who is at risk of suffering serious harm[.]" Section 32A-4-2(B)(1) (1997). This Court recognized that the amended language allowed a court to adjudicate a child as abused without determining who was the abuser. *See Vincent L.*, 1998-NMCA-089, ¶ 12. In 1999, the Legislature amended Section 32A-4-2(B)(1) to its current version, which now reads that an "abused child" is a child "who is at risk of suffering serious harm because of the action or inaction of the child's parent, guardian or custodian[.]" Section 32A-4-2(B)(1) (1999). Mother and Father argue that although *Vincent L.* analyzed a prior version of the Act, *Vincent L.* controls because the 1999 amendment returned Section 32A-4-2(B)(1) to its pre-1997 meaning. We are not persuaded.

**{12}** Even if we were to agree with Mother's and Father's interpretation that *Vincent L.* requires a specific identification of the abusing parent, we disagree with their reading of the statute and interpretation of the 1999 amendment. "In engaging in statutory construction, our primary purpose is to give effect to the intent of the Legislature." *Town & Country Food Stores, Inc. v. N.M. Regulation & Licensing Dep't*, 2012-NMCA-___, ¶ 9, ___ N.M. ___, ___ P.3d ___ (Nos. 30,921 and 30,922, March 22, 2012). "The first rule is that the plain language of a statute is the primary indicator of legislative intent. Courts are to give the words used in the statute their ordinary meaning unless the Legislature indicates a different intent." *Id.* (alteration, internal quotation marks, and citation omitted). Here, we read the plain language of the statute to indicate that, when adjudicating a child as abused, the court must determine that it was *a* parent, guardian, or custodian who placed the child at risk by his or her action or inaction. We decline to read language into the child abuse statute that would require a court to determine *which* parent, guardian, or custodian was the abuser. *See id.* ("The court will not read into a statute . . . language which is not there, particularly if it makes sense as written." (internal quotation marks and citation omitted)). Therefore, evidence that the abuse was perpetrated by either Mother or Father is sufficient for a court to conclude that the action or inaction of a parent, guardian, or custodian caused the abuse, bringing the case within the ambit of the statute. Had the Legislature intended to require a court to specifically find which parent caused the abuse, it would have so specified. *See id.* ¶ 11 (stating that the Legislature would have provided clearer language if it had intended to require a condition precedent to the imposition of administrative penalties).

**{13}** Instead of returning the statute to a previous meaning, we interpret the 1999 amendment to clarify that a child may only be adjudicated as abused if the risk of harm is caused by a parent, guardian, or custodian of the child. Section 32A-4-2(B)(1) (1999). The previous version of the statute, which read only that an "abused child" means a child "who is at risk of suffering serious harm[,]" would have, by its plain language, allowed a child to be adjudicated as abused in situations where, for example, a child was being bullied at school, a child was being sexually abused by a neighbor, or perhaps even when a child was playing in a particularly rough football league. *See* § 32A-4-2(B)(1) (1997). In these situations, the child's parent, guardian, or custodian may not be putting the child in harm's

6

way and, therefore, it would not be beneficial to adjudicate a child as abused, take the child into CYFD custody, and begin a process leading to the termination of parental rights.

**{14}** Our interpretation is consistent with the policy considerations underlying the child abuse statute. In every case brought under the Children's Code, the "child's health and safety shall be the paramount concern." NMSA 1978, § 32A-1-3(A) (2009). We have long held that all parents have a duty to protect their children from harm. *Perry v. Williams*, 2003-NMCA-084, ¶ 19, 133 N.M. 844, 70 P.3d 1283. Courts must "recognize that the child's best interest is paramount throughout the proceedings. Thus, the district court need not place children in a legal holding pattern, while waiting for the parent to resolve the issues that caused their children to be deemed neglected or abused." *State ex rel. Children, Youth & Families Dep't v. Maria C.*, 2004-NMCA-083, ¶ 53, 136 N.M. 53, 94 P.3d 796 (citation omitted). Given these policy concerns, it would be illogical to read the statute in a way that would allow parents to abuse a child so long as there are no witnesses, the child is too young to provide evidence, and neither parent admits to the abuse or provides evidence against the other parent. *See Hess Corp. v. N.M. Taxation & Revenue Dep't*, 2011-NMCA-043, ¶ 12, 149 N.M. 527, 252 P.3d 751 (holding that statutes "are to be interpreted in accordance with the legislative intent and in a manner that will not render the statutes' application absurd, unreasonable, or unjust" (internal quotation marks and citation omitted)), *cert. denied*, 2011-NMCERT-003, 150 N.M. 619, 264 P.3d 520.

**{15}** Additionally, we disagree with Mother's and Father's interpretation of *Vincent L.* and read *Vincent L.* to draw the same conclusion as we have in this case. While *Vincent L.* held that, under the pre-1997 version of the statute, the court was required to assign responsibility for the abuse or neglect to a parent, guardian, or custodian, it did not hold that the court was required to specifically assign responsibility between two parents. 1998-NMCA-089, ¶¶ 1, 10. We find this distinction significant. The district court in *Vincent L.* specifically noted that, at all relevant times, the infant child had been in the custody of the mother, father, grandmother, and a babysitter. *Id.* ¶ 4. There is no indication that the court determined that it could rule out the grandmother and the babysitter as potential abusers. *Id.* ¶ 7. Without ruling out the grandmother and the babysitter, the district court could not make a determination that the abuse was caused by the action or inaction of "a parent, guardian, or custodian." *Id.* ¶¶ 7-10.

**{16}** Conversely, the district court in this case was able to determine that the abuser was either Mother or Father and, therefore, that the abuse was caused by "a parent, guardian, or custodian" as required by the statute. At all relevant times, Infant Child was in the custody of Father, Mother, the grandmother, and medical staff at the hospital. Both parents denied inflicting the abuse, and neither parent blamed the other. They offered different explanations as to who may have inflicted the injuries, including Older Child, the hospital staff, and an evil spirit in their home. The medical experts specifically rejected these theories as inconsistent with the types of injuries sustained by Infant Child, and the district court indicated that it did not believe Mother's and Father's explanations for Infant Child's injuries. The court specifically rejected Mother's and Father's arguments, stating that it had

7

"no problem" determining that the abuse was caused by either Mother or Father. We see a significant distinction between a court being unable to determine whether the abuser was a parent, grandparent, or a babysitter and a court being unable to determine whether the abuser is a mother or father.

**{17}** To the extent that Father separately argues that there was insufficient evidence to adjudicate Older Child as abused, we disagree. This Court has held that "[w]hile abuse of a sibling may be insufficient to justify terminating parental rights, it is evidence that should be considered in determining whether a child has been placed in danger." *In re I.N.M.*, 105 N.M. 664, 668, 735 P.2d 1170, 1174 (Ct. App. 1987); *see State ex rel. Children, Youth & Families Dep't v. Shawna C.*, 2005-NMCA-066, ¶ 26, 137 N.M. 687, 114 P.3d 367 (noting that past harm to other children is relevant in determining the abuse and neglect of a different child). In *In re I.N.M.*, this Court found that a sibling's serious injuries combined with testimony about the parents' physical abuse of a sibling "support[ed] the [district] court's finding that the parents have placed [the child] in situations that could have endangered his life or health[.]" 105 N.M. at 669, 735 P.2d at 1175. As we explained, "[u]nder our statutes, it is not necessary to wait until a child has been injured, since knowingly, intentionally, or negligently placing a child in danger constitutes abuse . . . and is a ground for terminating parental rights." *Id.* Similarly, in *State ex rel. Children, Youth & Families Department v. David F., Sr.*, we found that even though the child was "taken into CYFD custody at the time of birth, and was therefore never in [the p]arents' care, the court could rely on evidence of neglect or abuse to the other children as a factor in determining whether parental rights to [the child] should be terminated." 1996-NMCA-018, ¶ 36, 121 N.M. 341, 911 P.2d 235.

**{18}** Here, where there was evidence showing multiple serious injuries to Infant Child, and the district court had determined that the injuries were caused by Infant Child's primary caretakers, either Mother or Father or both, there was sufficient evidence to find abuse of Older Child. "[W]hile a court may not speculate as to the future care of a child, the primary consideration is the best interests and welfare of the child and the court should not be forced to refrain from taking action until each child suffers an injury." *In re I.N.M.*, 105 N.M. at 669, 735 P.2d at 1175.

**{19}** Finally, we note that at this point in the proceedings, the district court was only adjudicating Children as abused and not terminating parental rights. Adjudicating a child as abused begins the process of implementing a parenting plan and, if the parents are not able to abide by the parenting plan, then their parental rights eventually may be terminated. However, at this stage in the proceedings, it is important for CYFD to act quickly to protect children from serious harm like the injuries suffered by Infant Child in this case. We affirm the district court's adjudication of Children as abused.

**The Statute Is Not Unconstitutionally Vague**

**{20}** Father also argues that the term "risk" as used in Section 32A-4-2(B)(1), as applied to him, is unconstitutionally vague because it fails to adequately notify Father of the conduct

8

it proscribes. "We review a challenge to the constitutionality of a statute de novo." *Shawna C.*, 2005-NMCA-066, ¶ 24. "A void-for-vagueness attack need not be preserved to enable our review." *Id.*

**{21}** Before analyzing Father's argument, we note that Father only cites one case, *Shawna C.*, for his argument that the term is unconstitutionally vague. However, this Court in *Shawna C.* expressly held that the term "at risk of suffering serious harm" was *not* unconstitutionally vague, as applied to the mother in that case. *Id.* ¶ 31 (internal quotation marks and citation omitted). Although *Shawna C.* analyzed an "as applied" vagueness challenge, *id.*, we find no reason to depart from its holding here.

**{22}** A strong presumption of constitutionality underlies each statute, and Father bears the burden of proving unconstitutionality beyond all reasonable doubt. *State v. Laguna*, 1999-NMCA-152, ¶ 24, 128 N.M. 345, 992 P.2d 896. A claim of vagueness is analyzed according to the particular facts of each case. *State v. Luckie*, 120 N.M. 274, 276, 901 P.2d 205, 207 (Ct. App. 1995). "In determining vagueness, we consider the words in the context in which they are used." *State ex rel. Health & Soc. Servs. Dep't v. Natural Father*, 93 N.M. 222, 225, 598 P.2d 1182, 1185 (Ct. App. 1979).

**{23}** "A statute may be void for vagueness if its meaning is so uncertain that the court is unable, by the application of known and accepted rules of construction, to determine what the Legislature intended with any reasonable degree of certainty." *State v. Castillo*, 2011-NMCA-046, ¶ 22, 149 N.M. 536, 252 P.3d 760 (alterations, internal quotation marks, and citation omitted), *cert. denied*, 2011-NMCERT-004, 150 N.M. 648, 264 P.3d 1171. We concluded above that Children were properly adjudicated as abused under the plain language of Section 32A-4-2(B)(1). Because we are able to determine the legislative intent through established rules of statutory interpretation, the statute is not unconstitutionally vague. *See Castillo*, 2011-NMCA-046, ¶ 22. For these reasons, we are not persuaded that Section 32A-4-2(B)(1) is unconstitutionally vague as applied to Father.

**CONCLUSION**

**{24}** We affirm the district court's order adjudicating Children as abused by Mother and Father. Further, we hold that the child abuse statute is not so vague as to violate Father's substantive due process protections.

**{25}    IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____

9

**JONATHAN B. SUTIN, Judge**

_____

**CYNTHIA A. FRY, Judge**

**Topic Index**

**CHILDREN**
Termination of Parental Rights

**CRIMINAL LAW**
Child Abuse and Neglect

**CONSTITUTIONAL LAW**
Vague or Overbroad

**STATUTES**
Interpretation
Legislative Intent