The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published.  The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>March 22, 2022</u>

**Nos. A-1-CA-39257 & A-1-CA-39258
(consolidated for purpose of opinion).**

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

 Petitioner-Appellee,

v.

**CARMELLA M.,**

 Respondent-Appellant,

and

**GARRETT S.F.,**

 Respondent,

**IN THE MATTER OF CARLOS F.,**

 Child.

and

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES**

**DEPARTMENT,**

Petitioner-Appellee,

v.

**CARMELLA M.,**

      Respondent,

and

**GARRETT S.F.,**

      Respondent-Appellant,

**IN THE MATTER OF CARLOS F.,**

      Child.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Kathleen A. McGarry, District Judge**

Children, Youth & Families Department
Mary McQueeney, Acting Chief Children's Court Attorney
Robert Retherford, Children's Court Attorney
Santa Fe, NM

for Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant Carmella M.

Susan C. Baker
El Prado, NM

for Appellant Garrett S.F.

Johnna L. Studebaker
Santa Fe, NM

Guardian Ad Litem

# OPINION

**ATTREP, Judge.**

{1}     Carmella M. (Mother) and Garrett S.F. (Father) (collectively, Parents) separately appeal the district court's adjudication of abuse, based on the endangerment definition of "abused child" in NMSA 1978, Section 32A-4-2(B)(4) (2018), and its finding of aggravated circumstances, under Section 32A-4-2(C)(1), as to their son, Carlos F. (Child).[1] Parents challenge the sufficiency of the evidence to support both the adjudication of abuse and the finding of aggravated circumstances.

{2}     This case arose from the unexpected death of Child's older sibling, Santiago F. (Sibling). The Children, Youth and Families Department's (CYFD) allegations of abuse as to Child are based on the injuries or abuse that befell Sibling. In particular, CYFD argues that Child is an "abused child" based either on (1) the theory that Sibling was physically abused by someone and this alone renders Child endangered, or (2) the theory that Parents knew or should have known about Sibling's injuries or abuse and failed to act appropriately in the face of their actual or constructive knowledge and this renders Child endangered. Because the culpability or responsibility of Parents must somehow be established to adjudicate a child abused,

---

[1]Because Parents' appeals involve the same underlying proceedings and raise related issues, we exercise our discretion to consolidate their appeals for decision. *See* Rule 12-317(B) NMRA.

CYFD's first theory fails as a matter of law. Because CYFD's second theory is not supported by substantial evidence in the record, it likewise fails. We accordingly conclude that CYFD did not meet its burden to prove by clear and convincing evidence that Child is an "abused child" under Section 32A-4-2(B)(4), and we reverse the adjudication of abuse. We do not reach Parents' additional claims of error.

**BACKGROUND**

{3}     Soon after Sibling's death, CYFD filed a petition alleging (1) abuse of Child, as defined in Section 32A-4-2(B)(1) and (B)(4), and (2) aggravated circumstances, as defined in Section 32A-4-2(C). It also filed an ex parte motion for custody of Child, which the district court granted. Child was eventually placed in the care of Mother's mother and stepfather. The district court's judgment of adjudication was rendered more than one and one half years after the filing of the petition. The delay in the adjudicatory proceedings resulted in part from a delay in obtaining the autopsy results for Sibling. The following recitation of facts is derived from testimony at the adjudicatory proceedings.

{4}     Sibling was born premature to Father and another woman. Sibling entered CYFD custody soon after birth, before Father gained custody of him. For a period of time in Sibling's early life, while Father was incarcerated, Sibling lived with Mother and her parents. In time, Father and Mother began living together, Sibling

2

came back into Father's custody, and Child was born to Parents. Sibling had developmental delays. His gross motor movement was impaired, and he was largely nonverbal. At the time of his death at nearly five years old, Sibling was walking, but still in diapers. Family members described that Sibling would sometimes have tantrums and throw his body around on the ground and on other objects when he became angry or frustrated.

{5}     On the day before Sibling's death, Mother's brother (Brother), his wife, and their two young sons spent the day at Parents' home with Mother, Father, Sibling, and Child. Brother described that he and Parents played with the four children. Brother did not see anything concerning in how Mother was caring for Sibling or Child. Brother often left his two young sons in Mother's care.

{6}     On the day Sibling died, he awoke at around 3:00 a.m., and Mother gave him some water before putting him back to bed. She later found him at the bathroom sink running his hands under the water and looking dazed. She asked him what was wrong, but he did not respond. She then took Sibling to another room, and as he was seated on the floor, he fell over, apparently unable to support himself. Concerned, Mother woke Father, and Mother called 911. At some point, Sibling stopped breathing, and Father began giving him CPR. After paramedics arrived, Sibling was taken to the emergency room. He died later that day at the hospital.

{7} The forensic pathologist who performed the autopsy on Sibling's body reported that the cause of death was diabetes insipidus, with a significant contributing condition of blunt head trauma. Diabetes insipidus is the body's inability to handle water in the blood, which can elevate salt levels in the blood; elevated salt levels, in turn, can cause seizures, damage brain cells, and cause death. The forensic pathologist testified that the autopsy also revealed multiple areas of blunt force trauma to the head and the torso. One such trauma caused a subdural hemorrhage that was estimated to have predated Sibling's death by about two to four days. Of the external bruises on Sibling's body, the only one the forensic pathologist was able to date was behind Sibling's right ear, which he estimated to be at least eighteen hours old. Ultimately, the forensic pathologist deemed the manner of death undetermined because, whether the diabetes insipidus was a preexisting organic condition or caused by blunt head trauma, was unknown. CYFD's expert in forensic pediatrics also testified to her opinion that some of the trauma on Sibling's head and torso was indicative of abuse. Parents' expert witness in anatomic, clinical, and forensic pathology opined that a pineal gland tumor in Sibling's brain (and not some external force) triggered the diabetes insipidus and that Sibling died of natural causes.

{8} After the close of evidence, the district court ordered the parties to submit written closing arguments and proposed findings of fact and conclusions of law.

4

Parents and Child's guardian ad litem's submissions proposed that Sibling's death was due to natural causes, that Child not be adjudicated as abused, and that the petition be dismissed. CYFD proposed that Sibling's death was nonaccidental and that Child be adjudicated abused.

{9}     The district court orally announced its findings of fact and conclusions of law, which then were memorialized in the adjudicatory judgment. The district court, quoting the statutory language of Section 32A-4-2(B)(4), concluded Child is an abused child as to Mother and Father as follows: "[Child]'s parents have knowingly, intentionally, or negligently placed the child in a situation that may endanger the child's life or health." The district court, quoting the statutory language of Section 32A-4-2(C)(1), concluded aggravated circumstances existed as to Mother and Father as follows: "[Child]'s parent or custodian has attempted, conspired to cause, or caused great bodily harm to the child or great bodily harm or death to the child's sibling."[2] In toto, the district court's findings of fact were:

> a. [Sibling] died February 18, 2019;
>
> b. [Sibling] was an older sibling of [Child]; [Mother] and [Father] are the parents of [Child];

---

[2]On appeal, CYFD maintains that aggravated circumstances exist as a result of "Parents' failure to seek medical attention when they knew [or] should have known about Sibling's abuse." As we explain in our examination of the district court's adjudication of abuse, this assertion is supported neither by findings of fact made by the district court nor substantial evidence in the record.

5

c. The cause of the death of [Sibling] was diabetes insipidus, with a significant contributing factor of blunt head trauma;

d. Diabetes insipidus is a condition caused by the disregulation of glandular functions, flushing fluid from the body and resulting in a dangerous imbalance of minerals;

e. The cause of the diabetes insipidus that resulted in [Sibling]'s death was blunt force trauma to the head, shown by a significant subdural hemorrhage and the accumulation of [sixty] milliliters of blood in the brain and skull cavity;

f. It is evident from the healing in the subdural hemorrhage that some of the blunt head trauma [Sibling] suffered was inflicted more than [eighteen] hours prior to [P]arents' call to first responders;

g. Although there is evidence [Sibling] was prone to accidents, the trauma and bruising in some areas of the head and torso are inconsistent with accidental injury; and

h. The opinion offered by [Parents'] expert witness, that a pineal-glial cyst caused the deadly condition diabetes insipidus, disregards the significant evidence of blunt force trauma to [Sibling] and subarachnoid hemorrhaging in close proximity to the pituitary gland.

{10} After Parents appealed the adjudicatory judgment, CYFD moved for a permanent guardianship, pursuant to NMSA 1978, Sections 32A-4-31 (2005) and -32 (2009), seeking the appointment of Mother's mother and stepfather as permanent guardians of Child and contending, among other things, that "termination of parental rights is not in . . . Child's best interests." The district court granted the motion, appointed Mother's mother and stepfather as Child's permanent guardians, reserved Parents' right to appeal the adjudicatory judgment, and dismissed CYFD from the district court action.

**STANDARD OF REVIEW**

{11}    The burden was on CYFD to establish through clear and convincing evidence that Child was abused. *See State ex rel. Child., Youth & Fams. Dep't v. Amanda H.*, 2007-NMCA-029, ¶ 22, 141 N.M. 299, 154 P.3d 674; *see also* NMSA 1978, § 32A-4-20(H) (2014) (establishing the clear and convincing standard for adjudications of abuse and neglect). To evaluate Parents' sufficiency challenge on appeal, "we must determine whether the district court's decision is supported by substantial evidence of a clear and convincing nature." *State ex rel. Child., Youth & Fams. Dep't v. Alfonso M.-E.*, 2016-NMCA-021, ¶ 26, 366 P.3d 282. "For evidence to be clear and convincing, it must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *State ex rel. Child., Youth & Fams. Dep't v. Michelle B.*, 2001-NMCA-071, ¶ 12, 130 N.M. 781, 32 P.3d 790 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support a conclusion." *State ex rel. Child., Youth & Fams. Dep't v. Keon H.*, 2018-NMSC-033, ¶ 36, 421 P.3d 814 (internal quotation marks and citation omitted). "We will uphold the district court's judgment if, viewing the evidence in the light most favorable to the judgment, a fact finder could properly determine that the clear and convincing standard was met." *Alfonso M.-E.*, 2016-NMCA-021, ¶ 26 (internal quotation marks and citation

7

omitted). To the extent our review involves questions of law, it is de novo. *Michelle B.*, 2001-NMCA-071, ¶ 12.

**DISCUSSION**

{12}    Before we address whether substantial evidence supports the adjudication of abuse of Child, we briefly discuss the parties' dispute about the cause of Sibling's death, as this largely has been the focus of these proceedings to date. The parties vigorously disputed below and now dispute on appeal whether Sibling's diabetes insipidus and death resulted from blunt head trauma. The cause of Sibling's death was the focal point of the adjudicatory hearings and the district court's findings. We, however, find it unnecessary to address the parties' arguments in this regard. Even assuming sufficient evidence supports the district court's finding that blunt head trauma caused Sibling's diabetes insipidus and death, CYFD did not meet its burden to prove that Child is an abused child under Section 32A-4-2(B)(4).

{13}    We reach this conclusion in view of CYFD's theories of abuse before us. CYFD's contention that Child is an abused child is not based on an allegation that Child suffered abuse at the hands of Parents. Instead, CYFD relies on the endangerment definition in Section 32A-4-2(B)(4), which defines an "abused child" as a child "whose parent, guardian or custodian has knowingly, intentionally or negligently placed the child in a situation that may endanger the child's life or health." CYFD contends Parents' actions or inactions vis-à-vis Sibling endangered

the life or health of Child. What, precisely, CYFD contends Parents did (or did not do) to or for Sibling, such that placing Child in the same environment that Sibling had been in would endanger Child, is, frankly, difficult to discern from the record and the briefing on appeal.

{14}     As best we can tell, CYFD advances two theories why Child is abused under Section 32A-4-2(B)(4). First, CYFD contends that because Sibling was "physically abused," as that term is defined in Section 32A-4-2(H), this alone renders Child endangered under Section 32A-4-2(B)(4). Second, CYFD contends that Parents "knew or should have known" about Sibling's injuries or abuse and should have taken action to protect him before they called for help on the day of his death, and that Parents' failure to do so renders Child endangered under Section 32A-4-2(B)(4). As we discuss below, CYFD's first theory fails because, as this Court has previously explained, an adjudication of abuse "require[s] some degree of culpability or responsibility on the part of the parent." *State ex rel. Child., Youth & Fams. Dep't v. Vincent L.*, 1998-NMCA-089, ¶ 10, 125 N.M. 452, 963 P.2d 529. CYFD's second theory of abuse is void of substantial evidence in the record and likewise fails.

I.     **Proof That Sibling Was Physically Abused, by Itself, Does Not Render Child Endangered Under Section 32A-4-2(B)(4)**

{15}     Both Parents argue at length that insufficient evidence supports a finding, if any, by the district court that one or both of them caused any injury to Sibling. We

9

understand from CYFD's briefing on appeal, however, that this is not the theory of abuse advanced by CYFD.[3] Instead, in response to Parents' argument, CYFD effectively concedes that insufficient evidence exists to support a finding that one or both Parents "harmed Sibling" and asserts that the district court "did not have [to] find that one or both Parents caused Sibling's injuries."

{16}    In support of its argument that Parents need not have caused Sibling's injuries, CYFD cites the definition of "physical abuse" in the Abuse and Neglect Act.

---

[3]New Mexico law permits a district court to adjudicate a child as abused if CYFD establishes through clear and convincing evidence that a parent physically abused a sibling. *See, e.g.*, *In re I.N.M.*, 1987-NMCA-043, ¶¶ 11, 18-19, 27, 105 N.M. 664, 735 P.2d 1170 (holding that the father's severe physical abuse of the sibling and the mother's failure to protect the sibling supported the trial court's finding that the parents endangered the child and the trial court's conclusion that the child was abused under a provision substantially identical to Section 32A-4-2(B)(4)); *State ex rel. Child. Youth & Fams. Dep't v. Arthur C.*, 2011-NMCA-022, ¶¶ 28, 33, 149 N.M. 472, 251 P.3d 729 (holding that "the court validly relied on the past physical abuse of [the child's] sibling, at least in part, to find sufficient evidence of abuse [under Section 32A-4-2(B)(4)] and neglect of [the child]"). But, again, we do not understand this to be CYFD's theory of abuse in this case. Furthermore, the district court made no findings of fact as to that theory. In fact, CYFD proposed factual findings supporting an inference that Parents were responsible for Sibling's injuries—i.e., that Sibling, in the days immediately preceding his death, was cared for almost exclusively by Mother and Father. These findings, however, were not adopted by the district court and, as a result, are deemed rejected. *See In re Guardianship of Ashleigh R.*, 2002-NMCA-103, ¶ 18, 132 N.M. 772, 55 P.3d 984 ("When a trial court rejects proposed findings of fact, we assume that there was insufficient evidence to support them."); *see also In re Yalkut*, 2008-NMSC-009, ¶ 18, 143 N.M. 387, 176 P.3d 1119 ("[F]ailure to make a finding of fact is regarded as a finding against the party seeking to establish the affirmative."). We therefore give this theory of abuse no further consideration.

10

"[P]hysical abuse" includes any case in which the child suffers strangulation or suffocation and any case in which the child exhibits evidence of skin bruising, bleeding, malnutrition, failure to thrive, burns, fracture of any bone, subdural hematoma, soft tissue swelling or death and:

    (1)    there is not a justifiable explanation for the condition or death;

    (2)    the explanation given for the condition is at variance with the degree or nature of the condition;

    (3)    the explanation given for the death is at variance with the nature of the death; or

    (4)    circumstances indicate that the condition or death may not be the product of an accidental occurrence.

Section 32A-4-2(H). In citing this definition, CYFD appears to contend that Sibling was physically abused by *someone* and that this fact alone renders Child endangered in Parents' care under Section 32A-4-2(B)(4).

{17}    To the extent CYFD argues that Sibling's physical abuse in and of itself—without any corresponding parental culpability in or responsibility for the abuse—is sufficient to render Child abused under Section 32A-4-2(B)(4), we cannot agree. Although it is not required under Section 32A-4-2(B)(4) that the parent inflict or cause harm to a child, it is required that the parent be responsible or culpable in some way for placing the child in a situation that may endanger the child's life or health. *See* § 32A-4-2(B)(4) (requiring that the parent "*knowingly, intentionally or negligently* place[] the child in a situation that may endanger the child's life or

11

health" (emphasis added)). This requirement was made clear over twenty years ago in *Vincent L.*, a case in which this Court held that all adjudications of abuse "require some degree of culpability or responsibility on the part of the parent." 1998-NMCA-089, ¶ 10; *see also State ex rel. Child., Youth & Fams. Dep't v. Carl C.*, 2012-NMCA-065, ¶¶ 13, 15, 281 P.3d 1242 (reading *Vincent L.* as holding that the district court is required to assign responsibility for the abuse or neglect to a parent).[4]

{18} In *Vincent L.*, CYFD argued that the definition of "physical abuse," quoted above, provides an independent ground to adjudicate a child abused when the parent, guardian, or custodian is *not* responsible for the abuse. 1998-NMCA-089, ¶ 9. This

---

[4] *Carl C.* grappled with the specific question of whether Section 32A-4-2(B)(1) requires CYFD to prove *which* parent in particular placed the child at risk by his or her inaction, so long as CYFD can prove at least one parent did. *See Carl C.*, 2012-NMCA-065, ¶¶ 12-16. In this case, we deal with a different question—i.e., whether CYFD can adjudicate a child abused without proof that either parent is somehow culpable or responsible. *Vincent L.* answered this question in the negative, and this holding remains good law today. *See Carl C.*, 2012-NMCA-065, ¶¶ 13, 15. Although there was a period of time following *Vincent L.* when one definition of "abused child," § 32A-4-2(B)(1) (1997), appeared not to require the culpability or responsibility of a parent, all definitions of "abused child" in the 1993 version of Section 32A-4-2(B), at issue in *Vincent L.*, like the current version of Section 32A-4-2(B), require some culpability or responsibility on the part of a parent. *Compare* § 32A-4-2(B) (1993) (requiring abuse "inflicted by the child's parent," a parent who "has knowingly, intentionally or negligently" endangered the child, or a parent who "has knowingly or intentionally tortured, cruelly confined or cruelly punished the child"), *with* § 32A-4-2(B) (requiring "action or inaction of the child's parent," physical abuse "inflicted or caused by the child's parent," sexual abuse or exploitation "inflicted by the child's parent," a parent who "has knowingly, intentionally or negligently" endangered the child, or a parent who "has knowingly or intentionally tortured, cruelly confined or cruelly punished the child").

12

Court rejected CYFD's argument, explaining that "this definition of physical abuse, rather than providing an independent basis for proceeding on an abuse petition, simply defines what is meant by physical abuse in the definition for an abused child." *Id.* The Court went on to explain that "a child is either neglected or abused due to actions or inactions by a parent or guardian." *Id.* ¶ 10. As a result, CYFD must "show that the parent or guardian had a duty to the child and through some action or inaction allowed the child to be harmed or neglected." *Id.* Further, although "[t]here is no requirement of criminal culpability," the Court explained, "there must still be a showing that the parent or guardian was responsible somehow for the harm." *Id.*; *cf. Carl C.*, 2012-NMCA-065, ¶ 13 (providing that, to adjudicate a child abused under Section 32A-4-2(B)(1), the risk of harm to the child must be caused by a parent, as distinct from the situation in which, e.g., the child was sexually abused by a neighbor or bullied at school). The Court concluded, "[W]e do not believe that the [L]egislature intended to make evidence of physical abuse alone, without any evidence that a parent was in some fashion responsible for the injury, enough to prove a child abused under the Act." *Vincent L.*, 1998-NMCA-089, ¶ 12. In sum, an abuse adjudication cannot be based on the mere fact that the child is the victim of physical abuse; instead, the parent, through action or inaction, must somehow be culpable in or responsible for the harm to the child. *See id.* ¶¶ 9-12; *see also* § 32A-

4-2(B) (requiring culpability or responsibility of parent under all definitions of "abused child").

{19}     Under *Vincent L.*, physical abuse of Child, without any corresponding culpability or responsibility on the part of Parents, would be insufficient to support an adjudication of abuse. *See* 1998-NMCA-089, ¶¶ 9-12; *see also* § 32A-4-2(B). Likewise, physical abuse of Sibling in and of itself is insufficient to support a finding that Child is endangered under Section 32A-4-2(B)(4), and thus CYFD's contentions to the contrary fail. *Id.*

## II.     CYFD's Contention That Parents Knew or Should Have Known About Sibling's Abuse or Injuries Is Not Supported by Substantial Evidence

{20}     In apparent recognition of the need to establish culpability or responsibility, CYFD contends that Parents knew or should have known about Sibling's abuse or injuries—in particular, bruising on Sibling's body—and failed to act appropriately in the face of this actual or constructive knowledge.[5] Although CYFD does not cite the "neglected child" definition in the Abuse and Neglect Act, it appears CYFD's argument is premised on some theory of neglect of Sibling. *See* § 32A-4-2(G)(3) (defining a "neglected child" as a child "who has been physically . . . abused, when

---

[5]CYFD is not entirely consistent with its argument on this point. At times, it argues that Parents knew or should have known about Sibling's *abuse*; and at others, it argues that Parents knew or should have known about Sibling's *injuries*. All of CYFD's arguments, however, turn on actual or constructive knowledge of Sibling's injuries—a premise, as we discuss, that lacks support in the record.

the child's parent, guardian or custodian knew or should have known of the abuse and failed to take reasonable steps to protect the child from further harm"); *see also Michelle B.*, 2001-NMCA-071, ¶ 17 (providing that, to support a finding of neglect, "the court must have been presented with clear and convincing evidence of [the parent's] culpability through intentional or negligent" action or inaction). CYFD's neglect argument fails.

{21}     As an initial matter, the district court made no findings of fact to the effect that Parents knew or should have known about Sibling's injuries and failed to respond appropriately. None of the district court's findings, which are set out in full in the background section of this opinion, relate to whether—or support a finding that—Parents knew or should have known about Sibling's injuries. As a result, the district court's findings cannot support a legal conclusion that Parents neglected Sibling because they knew or should have known about his injuries and failed to respond appropriately. *Cf. State ex rel. Child., Youth & Fams. Dep't v. Amanda M.*, 2006-NMCA-133, ¶ 31, 140 N.M. 578, 144 P.3d 137 (explaining that the district court's findings did not support the legal conclusion that the mother "inflicted or caused" the child's physical abuse under Section 32A-4-2(B)(2)). And although we must construe findings liberally in support of a judgment, we cannot go so far as to find facts omitted by the district court. *See Toynbee v. Mimbres Mem'l Nursing Home*, 1992-NMCA-057, ¶ 16, 114 N.M. 23, 833 P.2d 1204 (explaining that "[o]n

15

appeal, a reviewing court liberally construes findings of fact adopted by the fact finder in support of a judgment"); *Herndon v. Albuquerque Pub. Schs.*, 1978-NMCA-072, ¶ 14, 92 N.M. 635, 593 P.2d 470 (providing that "it is beyond the function of an appellate court to find facts omitted by the trial court" and that our duty is instead "to interpret the findings made to determine whether the findings are sufficient to support the judgment entered").

{22} Regardless, even had the district court made findings in support of CYFD's theory that Parents knew or should have known about Sibling's injuries and failed to act appropriately, the evidence CYFD directs us to on appeal does not support that theory. CYFD cites the following:

> Sibling was at higher-than-normal risk of abuse due to his premature birth, developmental delays, lack of potty-training, having a younger sibling, and having a nonbiological parent reportedly as the primary caregiver. There were indications of Father having anger management issues. Mother's demeanor seemed "odd" to [one of the officers who responded to the 911 call on the day of Sibling's death]. Between Sibling's transition [from Mother's mother] to Parents and his death, [Mother's mother and stepfather never] saw Parents' home or how Sibling was cared for in the home. [Mother's mother] saw nothing in the home that Sibling might have accidentally fallen on.

This evidence, such as it is, does not relate to, let alone establish, Parents' actual or constructive knowledge of Sibling's injuries or Parents' inaction in response to such injuries. In fact, it supports nothing more than a vague inference of a risk of harm to Sibling. Such an inference, this Court previously has explained, "does not meet a

16

clear and convincing standard, instantly tilting the scales in the affirmative, for any of the statutory definitions" of abuse or neglect. *State ex rel. Child., Youth & Fams. Dep't v. Shawna C.*, 2005-NMCA-066, ¶ 22, 137 N.M. 687, 114 P.3d 367 (rejecting a similar attempt to establish that a father's personality traits and criminal history created an inference of child abuse, despite the absence of any evidence of the father being violent toward the child).

{23}    Nor does our review of the record reveal evidence that might support CYFD's contention that Parents knew or should have known about Sibling's injuries, particularly Sibling's bruising, and failed to take appropriate action. In terms of the medical evidence: Other than a single bruise behind Sibling's right ear, which was described as prominent and yellowish and at least eighteen hours old, the record before us contains little description about the nature of the bruising on Sibling's body,[6] and it contains no information about when that bruising might have been visible or whether a lay person would have recognized such bruising as nonaccidental or needing immediate medical attention. Further, there is no evidence that Sibling's subdural hemorrhage would have resulted in noticeable symptoms. In terms of lay testimony: Three witnesses—Mother, Father, and Brother—saw Sibling in the days before his death. Of those witnesses, only Father testified to Sibling's

---

[6]Although the autopsy report and photographs were introduced into evidence before the district court, they were not made part of the record on appeal.

17

injuries, describing them as bumps and bruises from playing with other children, but nothing out of the ordinary.[7]

{24}  In short, CYFD's assertion that Parents knew or should have known about Sibling's injuries and failed to take appropriate action is unsupported. *Compare Amanda M.*, 2006-NMCA-133, ¶ 30 (affirming an adjudication of abuse where "[the m]other was aware that something was wrong with [the child]" and there was "expert testimony that injuries like [the child's] would result in immediately apparent signs of trauma" and concluding that "[t]hese signs were sufficient to have put [the m]other on notice that [the child] required immediate medical attention"), *with Michelle B.*, 2001-NMCA-071, ¶ 15 (reversing a finding of abuse against the mother based on sexual abuse by the father where the record was "silent" as to evidence establishing that the mother knew or should have known that the father intended to injure the child or had a propensity to sexually abuse the child).

**CONCLUSION**

---

[7]CYFD contends Father's description of Sibling's injuries is contradicted by what the autopsy revealed and, as a result, suggests that "Father was either negligent in caring for Sibling's well-being or intentionally hiding his son's real condition." As noted, the autopsy report and photographs were not made part of the appellate record. Regardless, given that the timing of all but one of Sibling's bruises could not be established and no testimony or evidence described how the bruises would have appeared at the time Father described, the possible discrepancy between Father's description and what the autopsy later revealed is not indicative of negligent care or deceit, as CYFD suggests.

Having examined the evidence in the light most favorable to CYFD in view of CYFD's theories of child abuse in this case, we conclude that CYFD failed to establish by clear and convincing evidence that Child is an "abused child" under Section 32A-4-2(B)(4). We therefore reverse the adjudication of abuse as to Mother and Father. Because we reverse on this basis, we do not reach Parents' claims of error as to the aggravated circumstances finding.

**IT IS SO ORDERED.**


_____
**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**


_____
**JANE B. YOHALEM, Judge**


_____
**KATHERINE A. WRAY, Judge**